IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RODERICK ABRAMS,                    )

    PLAINTIFF,                      )

VS.                                 )          CV-01-H-932-S

THE CITY OF HOMEWOOD, et al.        )

03 APR 22  AM 9: 25

U.S. DISTRICT COURT
N.D. OF ALABAMA

**ENTERED**

APR 2 2 2003

MEMORANDUM OF DECISION

    The court has before it the August 30, 2002 motion of
defendants for summary judgment in their favor (Document Number
32) which the court views as seeking summary judgment with regard
to all remaining claims in this action.  As the November 5, 2002
order reflects (Document Number 46), three of those claims
(Counts I, IV and V) assert claims under 42 U.S.C. § 1983 and
five of the claims (Counts VI, VII, VIII, IX and X) assert only
state law claims as to which the court only has supplemental
jurisdiction under 28 U.S.C. § 1367.  For the reasons hereinafter
stated, the court is of the opinion that all remaining defendants
are entitled to judgment in their favor with regard to the
remaining § 1983 claims against them.  The court has determined
it will decline to exercise supplemental jurisdiction over the
remaining state law claims, which will be dismissed without
prejudice pursuant to 28 U.S.C. § 1367, and this memorandum of

48

decision will not endeavor to discuss those pendant state law claims.

## I.  Remaining Claims

Count I of the complaint charges City of Homewood police officers Greg Brundage, James Carney, Kathy Henderson and Scott Leigh (collectively referred to as "defendant police officers"), in their respective individual capacities essentially with depriving plaintiff of his Fourth Amendment and Fifth Amendment constitutional rights by their unreasonable seizure and their use of excessive force during such seizure.  Count IV charges City of Homewood Chief of Police, Charles Trucks, in his individual capacity, with depriving plaintiff of his constitutional rights by failing properly to supervise the training and conduct of the defendant police officers.  Count V charges The City of Homewood with depriving plaintiff of his constitutional rights through policies and customs of inadequate supervision and training of its police officers and through policies and customs of deliberate indifference to plaintiff's constitutional rights. Under the September 4, 2001 order, as amended, discovery closed August 1, 2002.  On August 30, 2002 defendants timely filed subject motion for summary judgment, filing at the same time a brief (Document Number 33) and evidence (Document Number 34) in support thereof.  In opposition to the motion plaintiff filed on October 3, 2002 a response with an attached brief and exhibits

2

(Document Number 37).  Defendants filed on October 17, 2002 a
reply to plaintiff's response (Document Number 41).  Pursuant to
the September 4, 2002 order, the motion for summary judgment is
now under submission.

### II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary
judgment is proper "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir.
2000)  The party asking for summary judgment always bears the
initial responsibility of informing the court of the basis for
its motion and identifying those portions of the pleadings or
filings which it believes demonstrate the absence of a genuine
issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once
the moving party has met his burden, Rule 56(e) requires the
nonmoving party to go beyond the pleadings and by his own
affidavits, or by the depositions, answers to interrogatories,
and admissions of file, designate specific facts showing that
there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material
and which are irrelevant.  Chapman, 229 F.3d at 1023; Anderson v.

3

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable
doubts about the facts and all justifiable inferences are
resolved in favor of the non-movant. Chapman, 229 F.3d at 1023;
Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir.
1993).  A dispute is genuine "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the
evidence is merely colorable, or is not significantly probative,
summary judgment may be granted.  Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to
discharge its initial burden depends on whether that party bears
the burden of proof on the issue at trial.  See Fitzpatrick, 2
F.3d at 1115-17 (citing United States v. Four Parcels of Real
Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the
moving party bears the burden of proof at trial, then it can only
meet its initial burden on summary judgment by coming forward
with positive evidence demonstrating the absence of a genuine
issue of material fact; i.e. facts that would entitle it to a
directed verdict if not controverted at trial.  Fitzpatrick, 2
F.3d at 1115.  Once the moving party makes such a showing, the
burden shifts to the non-moving party to produce significant,
probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at
trial, it can satisfy its initial burden on summary judgment in

4

either of two ways.  First, the moving party may produce
affirmative evidence negating a material fact, thus demonstrating
that the non-moving party will be unable to prove its case at
trial.  Once the moving party satisfies its burden using this
method, the non-moving party must respond with positive evidence
sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not
bear the burden of proof at trial can satisfy its initial burden
on summary judgment is to affirmatively show the absence of
evidence in the record to support a judgment for the non-moving
party on the issue in question.  This method requires more than a
simple statement that the non-moving party cannot meet its burden
at trial but does not require evidence negating the non-movant's
claim; it simply requires the movant to point out to the district
court that there is an absence of evidence to support the non-
moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the
movant meets its initial burden by using this second method, the
non-moving party may either point out to the court record
evidence, overlooked or ignored by the movant, sufficient to
withstand a directed verdict, or the non-moving party may come
forward with additional evidence sufficient to withstand a
directed verdict motion at trial based on the alleged evidentiary
deficiency.  However, when responding, the non-movant can no
longer rest on mere allegations, but must set forth evidence of

specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[1]

On the night of October 1, 2000 Roderick Abrams attempted to

burglarize a business in Homewood, Alabama.  (<u>See</u> Pl.'s Depo. at

28, 41, Def. Evid. Sub. Ex.1.)   Abrams, who had smoked four

sacks of crack cocaine earlier in the evening, repeatedly rammed

a vehicle[2] into the back door of a building in the Business Park

area of Homewood. (<u>Id</u>. at 41-43.)  After hitting the building

with his car, Abrams got out of the vehicle and attempted to

enter the premises. (<u>Id</u>.)

Officer Scott Leigh, a sergeant with the Homewood Police

Department, observed Abrams ramming the building and saw Abrams

try to crawl through an opening in the wall. (<u>See</u> Uniform

Accident Report, Officer Scott Leigh, Def. Evid. Sub. Ex. 3)

Officer Leigh immediately approached the business in his police

cruiser, but Abrams got back into his vehicle and sped away.

(<u>Id</u>.)

Officer Leigh pursued as Abrams ran through numerous stop

signs and traffic lights on major Homewood streets while

attempting to outrun the police.[3] (<u>Id</u>; <u>See</u> <u>also</u>, Pl.'s Depo. at

---------------

[1] Facts are undisputed unless otherwise expressly noted.

[2] The vehicle belonged to his friend "Eddie."

[3] At least five other police vehicles joined the pursuit.

47-48, Def. Evid. Sub. Ex.1; Pl. tape Ex. 2)  After running stop
signs and traffic lights,  nearly hitting several vehicles, and
driving at least 70 mph,  Abrams turned onto Greensprings Highway
and continued to outrun the police. (See Pl.'s Depo. at 49, Def.
Evid. Sub. Ex. 1; Pl. tape Ex. 2)  Abrams admits he was
attempting to outrun the police by driving in excess of 70 miles
per hour and running stop signs and traffic lights; he further
admits his acts were dangerous to the public, but does not admit
that his conduct was dangerous to the police.  (See Pl.'s Depo.
at 49-50, Def. Evid, Sub. Ex. 1.) While on the highway, Officer
Leigh initiated a "PIT" maneuver, a technique that required
striking Abram's vehicle in the left rear and causing him to spin
out. (See Uniform Accident Report, Officer Scott Leigh, Def.
Evid. Sub. Ex. 3; see also Pl. tape Ex. 2)  Abrams' vehicle,
traveling at 60 miles per hour, came to an abrupt stop after
running head-on into a ditch. (See Pl.'s Depo. at 63-64, Def.
Evid. Sub. Ex. 1.)  Videotapes recorded a lot of the events
relevant to this case and have been submitted as part of
plaintiff's evidence.  Plaintiff's tapes Exhibits 2 & 3 show a
massive impact with the hood flying up and a large amount of
black smoke immediately coming out of the front, but plaintiff
does not recall either. (See Pl.'s Dep. at 63-64, Def. Evid. Sub.
Ex. 1)  Although he was not wearing a seat belt, plaintiff claims
he received no injuries from the wreck. (Id.)

Abrams attempted to open the door to escape but was pulled out of the vehicle by Officer Leigh. (<u>See</u> Uniform Accident Report, Officer Scott Leigh, Def. Evid. Sub. Ex. 3; <u>see also</u> Pl. tapes Ex. 2 & 3)  Once Officer Leigh removed Abrams from the vehicle, he struck Abrams twice in the rear/shoulder back area. (<u>See</u> Uniform Accident Report, <u>supra</u>.) During the removal, in an effort to subdue Abrams, Abrams was sprayed with a spray (similar to mace or pepper spray) by Officer James Carney,[4] who earlier joined in the pursuit. (<u>Id.</u>)  A number of other officers arrived at the scene, including defendants Henderson and Brundage. (<u>See</u> Deposition of Officer James Carney, Def. Evid. Sub. Ex. 6.) Abrams was placed face-first on the ground with a number of officers assisting in his restraint while he was handcuffed by Officer Leigh.[5] (<u>See</u> Uniform Accident Report, <u>supra; see also</u> Pl. tapes Ex. 2 & 3.)

The videotapes which recorded a lot of the events relevant to this case were taken from three different police cruisers. These tapes captured Abram's chase, crash and arrest. Plaintiff's Tape Exhibit 2 & 3 show police cruisers chasing Abram's vehicle through many streets and busy intersections.  The tapes show Abrams running at least 3 red lights at very high speeds and nearly hitting a vehicle on Greensprings Highway.  Plaintiff's

---

[4] Officer Leigh was also inadvertently sprayed.

[5] <u>See</u> footnote 10, <u>infra</u>.

Tape Exhibit 2 recorded Abram's vehicle being struck by a police
cruiser[6], crashing into a ditch[7] and thick smoke immediately
rising from the engine.[8]  Two officers are then seen immediately
approaching Abram's vehicle, and one officer pulls Abrams from
the passenger side door and places him in the ditch.  The officer
hits Abrams twice while subduing Abrams on the ground,[9] and at
least six other officers come to the officer's aid in
handcuffing[10] Abrams.  Abrams, handcuffed, is moved from the

---

[6] Abrams testified that the police cruiser that struck him
did not have its lights on and came from the opposing direction
"head on." (See Pl.'s Depo. at 57, Def. Evid. Sub. Ex.1.) The
tapes do not support this; rather, they only show a police
cruiser with its lights and siren on, hitting Abram's vehicle
from behind and the side. (See Pl.'s Tape Ex. 2 & 3.)

[7] The backside of the ditch, in reality, was a vertical
embankment.

[8] Abrams testified that his car did not catch on fire, did
not smoke and there was no damage to the hood of the car after he
hit the ditch. (See Pl.'s Depo. at 64, Def. Evid. Sub. Ex. 1.)
The tapes do not support this statement. The tapes show a
protruding crushed hood after impact and a large plume of black
smoke coming from the engine. (See Pl.'s Tapes Ex. 2 & 3.)

[9] Abrams testified that he got out of the car and was
standing up before the officer threw him on the ground. (See
Pl.'s Depo. at 73, Def. Evid. Sub. 1) The tapes simply do not
support this statement.  As noted, they show an officer
physically pull Abrams out of the car and immediately place him
on the ground. (See Pl.'s Tapes Ex. 2 & 3.)

[10] Abrams also testified that from the time he was removed
from the vehicle to the time he was placed in the ambulance, he
was never handcuffed. (See Pl.'s Depo. at 79, Def. Evid. Sub. Ex.
1.) The tapes also do not support this statement.  As noted
above, the tapes clearly show Abrams handcuffed while lying on
the side of the street. (See Pl.'s Tapes Ex. 2 & 3.)

ditch to the side of the street by two officers.[11]  During the move, Abrams' right leg seems limp.  Two officers, one male and one female, contain Abrams on the ground until medics arrive.

Abrams was admitted to the UAB Medical Center under the name "Steve Ellis." (See Physician's Attestation Statement, UAB Hospital, Def. Evid. Sub. Ex. 2.)  Abrams was treated for a fractured forearm and fractured femur. (See Discharge Summary, Def. Evid. Sub. Ex. 2.)  The medical reports indicate Abrams also had a laceration to the lower lip and was noted as being combative and belligerent. (Id; see also Consultation Report, Def. Reply Brief, Ex. A.)  Abrams was discharged after a four-day hospital visit and taken into police custody. (See Discharge Summary, Def. Evid. Sub. Ex. 2.)

Abrams states that although he was not wearing his seat belt, he received no injuries from the car slamming into the ditch.[12] (See Pl.'s Depo. at 63-64, Def. Evid. Sub. Ex. 1.) Rather, Abrams states that an officer broke his arm and leg by twisting them while he was laying on the ground. (See Pl.'s Depo.

---

[11] The videotapes clearly show that Abrams was handcuffed at this time.

[12] While for summary judgement purposes the court must accept his assertion of no injury resulting from the crash as correct, the tapes reflect such a violent impact as to seriously call into question the correctness of this assertion.  Indeed, were the case to go to trial, the weight of the videotapes, which contradict plaintiff's deposition in so many material areas (see footnotes 6 through 11, supra), would likely result in a judgement on a matter of law for defendants.

at 76, Def. Evid. Sub. Ex. 1.) However, Abrams admitted that he cannot identify any officer who physically assaulted him and, more importantly, that he cannot identify any officer who Abrams asserts broke his arm or leg. (See. Pl.'s Depo. at 77; 105-108.) There is simply no other evidence which identifies any such officer.

Abrams pled guilty to receiving stolen property, burglary in the third degree and possession of a controlled substance, crack cocaine. (<u>Id</u>. at 22-26.) Abrams was sentenced to two years without probation for his actions on October 1, 2000. (<u>Id</u>.)

**IV. DISCUSSION**

**A. Fourth Amendment Claims**

Abrams alleges the officers involved in his arrest violated the Fourth Amendment by conducting an unreasonable seizure by intentionally ramming his vehicle and causing it to crash and using excessive force by breaking his arm and leg while he was being arrested.

**1. Excessive Force**

On the issue of excessive force, Abrams bears the burden at trial to prove the defendants broke his arm and leg when they arrested him. See <u>Cuesta v. School Board of Miami-Dade County, FL</u>, 285 F.3d 962 (11th Cir. 2002)(holding plaintiff in 1983 action bears the burden of persuasion on every element). Hence, on a motion for summary judgement, the defendant's burden

11

consists of showing the court there is an absence of evidence to support any of Abrams' claims of excessive force. See U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991)(holding the moving party is not required to support its motion with affidavits negating the plaintiff's claims, but must show that there is an absence of evidence to support the non-moving party's case); see also Fitzpatrick, 2 F.3d at 1116; Celotex Corp., 477 U.S. at 323.  The defendants submit that at no time did any officer use excessive force in arresting Abrams, but more importantly, submit they certainly did not break his arm or leg during the arrest as alleged by Abrams. (See Def. Mem. at 11.) The defendants, rather, submit that Abrams' injuries were caused by his car crashing into the embankment.[13] (Id.) Relying on numerous exhibits attached to their memorandum, including the deposition testimony of James Carney, the Uniform Incident Report and medical records, the defendants state that plaintiff has failed to come forward with any evidence that supports his allegations that the officers broke his arm and his leg. (Id.)

Having met their initial burden showing the court that there is an absence of evidence to support plaintiff's case, Abrams must go beyond the pleadings and come forward with evidence

---

[13] Interestingly, although plaintiff claims to have received no injuries from his car crashing and hitting the embankment, in his response brief, he alleges quite to the contrary, " The issue before this Court is an illegal and improper high-speed chase which did result in serious bodily injury..." (See Pl.'s Response Brief at 8.) (emphasis added)

"sufficient to withstand a directed verdict motion at trial." <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1116; <u>see also</u> <u>Celotex</u>, 477 U.S. at 324. Abrams has come forward with <u>nothing</u> and has simply failed to meet his burden. In his reply brief, Abrams only attaches three exhibits that would suffice as evidence to meet this burden: videotapes.[14] Plaintiff alleges in his reply brief that "plaintiff's version of events is supported by a close examination of the in-car videos." (<u>See</u> Pl. Response Brief at 12.) A close examination of these videos only reveals plaintiff's car violently crashing into the side of a ditch and officers attempting to subdue and arrest him. At no point in the tapes are officers seen breaking plaintiff's arm or leg, and plaintiff has provided no other evidence to support this claim.

More importantly, plaintiff states "between the time the cameras were turned off, while these officers stood around and watched, the handcuffed plaintiff suffered a compound fracture to his right arm." (<u>See</u> Pl. Response Brief at 13-14.) Since, as the plaintiff states, this would not have been recorded, the plaintiff's burden would require some evidence to support this

---

[14] The other exhibits attached by plaintiff to his response brief include a copy of the Uniform Incident Report, excerpts of Scott Leigh's deposition, excerpts of the Homewood Police Department Standard Operations and Procedure, a copy of the Alabama Uniform Arrest Report, excerpts of Charles Trucks' deposition, a definition of Deadly Force Encounters, excerpts on guidelines for Reasonable force, excerpts of James Carney's deposition and medical records from UAB. There were no exhibits attached to plaintiff's reply to defendants reply brief.

claim besides the allegations in his pleadings. See Celotex, 477 U.S. at 324.  There are no evidentiary submissions attached to any of plaintiff's reply briefs, such as affidavits, that would support this statement.[15]   Rather, all of the exhibits attached to plaintiff's response brief relate to plaintiff's second claim that the officers conducted an unreasonable seizure; nothing comes remotely close to supporting plaintiff's allegations that his arm was broken while on the ground.  Plaintiff has not attached affidavits nor referenced any deposition testimony that would support this claim.

"One of the principal purposes of the summary judgement rule is to isolate and dispose of factually unsupported claims or defenses." Id.  The plaintiff has completely failed to meet his burden since he presented nothing to this court that would prevent a directed verdict at trial. The videotapes plaintiff relies upon simply fail to depict any of the allegations in his complaint, but more importantly, the tapes do not serve to go beyond his pleadings as the necessary evidence that would prevent his claim from withstanding a directed verdict at trial.  Abrams' allegations of injuries that occurred after the tapes stopped recording are supported only by the pleadings rather than any evidence as required by Fed. R. Civ. Pro. 56(c). As such, the

---

[15] In fact, not only did plaintiff lack evidence to support this claim after discovery, but also never requested an extension of time to find such evidence after this issue was raised by the defendants in their motion.

defendants are entitled to summary judgement of plaintiff's
excessive force claim.

## 2. Unreasonable Siezure

Abrams also alleges the defendant officers conducted an
unreasonable seizure by hitting his vehicle and causing his
vehicle to run into the ditch. (See Pl.'s Response Brief at 8.)
Since Officer Scott Leigh was the only officer to actually hit
Abrams' vehicle, he is the only officer against whom Abrams can
possibly sustain an unreasonable seizure claim. As such, the
Fourth Amendment seizure claims will be applied only to Officer
Leigh and are due to be dismissed as to Officers Carney, Brundage
and Henderson.

Although plaintiff attaches as evidence and regurgitates
Homewood's policy on high-speed pursuits of criminals, the proper
framework to analyze the seizure is Fourth Amendment
jurisprudence.  In deciding whether a particular seizure is
reasonable, reasonableness "is to be determined by 'balanc[ing]
the nature and quality of the intrusion on the individual's
Fourth Amendment interests against the importance of the
governmental interests alleged to justify the intrusion.'"
Gilmere v. City of Atlanta, 774 F.2d 1495, 1502 (11th Cir.
1985)(quoting United States v. Place, 462 U.S. 696, 703 (1983)).
Proper application of this test requires "careful attention to
the facts and circumstances of each particular case."  Graham,

490 U.S. at 394.  The reasonableness of any particular seizure is also "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. at 396.  In determining whether a given seizure is reasonable the court must make "allowance for the fact that police officers are often called upon to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situations.  Id. at 396-97.  The test of reasonableness is an objective one; therefore, the underlying motivation of the officer is irrelevant.  Id. at 397.

As evidenced by the videotapes supplied by plaintiff, Abrams took the Homewood Police Officers on a dangerous high-speed chase through some of Homewood's busiest intersections. (See Pl.'s Tapes, Pl.'s Evid. Sub. Ex. 2, 3,4.)  Abrams admitted to driving at least 70 m.p.h during the chase and admitted that his actions were dangerous to the public. (See Pl.'s Depo. at 49-50, Def. Evid, Sub. Ex. 1.)  Officer Leigh rammed the side of Abrams' vehicle and caused it to crash once Abrams turned onto a street with less traffic. (See Dep. of Scott Leigh at 33-35, Pl.'s Evid. Sub. Ex. 5.)  The 11th Circuit, sitting en banc in Adams v. St. Lucie County Sheriff's Department, held that such a seizure would be reasonable under Fourth Amendment standards. 998 F.2d 923

16

(11th Cir. 1993)(adopting dissenting opinion of J. Edmondson, 962 F.2d at 1573-1579.)

In Adams, a driver and a passenger were stopped and questioned for charges related to a misdemeanor. The officers were notified that there was an outstanding warrant for the driver's failure to appear in court on a misdemeanor offense for petty theft. There were no warrants for the passenger.  The driver soon sped off and a high-speed chase ensued through a residential neighborhood. An officer intentionally rammed the suspect's vehicle and the suspect's vehicle sped out of control and hit a house and telephone pole. The driver walked away with minor injuries but the passenger was killed.  The passenger's estate filed suit alleging the officers used unreasonable force in seizing the vehicle by ramming it and causing the accident.

Although the court was determining whether to award qualified immunity, it held,

"[I]t is doubtful that the alleged level of force in this case was unconstitutionally excessive.  A driver–even a midemeanant–eluding arrest in a car driven at high speeds creates a dangerous and potentially deadly force. (citations omitted) Plaintiffs have brought no case law to our attention, and my research has uncovered no case law, stating or even hinting that ramming a speeding car that presents danger to the public would be an unreasonable seizure under the Fourth Amendment. Even the Court in Garner recognized that, when a fleeing suspect poses a threat of danger to others, a higher degree of force is permissible. 471 U.S. at 11. Under the circumstances alleged here, the police very possibly behaved lawfully."
962 F.2d 1563.

There is simply no doubt that Officer Leigh acted reasonably
in seizing Abrams' vehicle by intentionally ramming it and
causing the crash.  In <u>Tennessee v. Garner</u>, the U.S. Supreme
Court held "[W]here the officer has probable cause to believe
that the suspect poses a threat of serious physical harm, either
to the officer or others, it is not constitutionally unreasonable
to prevent escape by using deadly force." [16] <u>Garner</u>, 471 U.S. at
11.  There is no dispute in the case that Abrams' actions were
dangerous to the public. (<u>See</u> Pl.'s Depo. at 49-50, Def. Evid,
Sub. Ex. 1.) Officer Leigh noted in his Uniform Accident Report
that he witnessed Abrams repeatedly ramming his vehicle into a
building and thereafter initiated an pursuit that led to the
high-speed chase. (<u>See</u> Uniform Accident Report, Officer Scott
Leigh, Def. Evid. Sub. Ex. 3.)  Officer Leigh rammed his vehicle
out of fear that Abrams was likely going to speed into an area
with greater traffic unless he was stopped. (<u>See</u> Depo. Scott
Leigh at 33-35, Pl's Evid. Sub. Ex. 5.)  The videotapes clearly
show Abrams vehicle speeding down busy intersections and placing
the lives of other motorists and the officers involved at great

---

[16] The 11th Circuit in <u>Adams</u> did not find ramming a vehicle
to be deadly force. " A police car's bumping a fleeing car is, in
fact, not much like a policeman's shooting a gun so as to hit a
person. A gun is an instrument designed for the destruction of
life or the infliction of injury, and death or injury will result
if a person is struck by a bullet. While an automobile is capable
of lethality, it is not designed to kill or to injure; and even
when automobiles strike each other, death and injury may well not
result." 962 F.2d at 1577.

risk.[17] (See Pl.'s Tapes, Pl.'s Evid. Sub. Ex. 2, 3,4.) Abrams testified that his intent was to outrun the police and he had just committed a felony which was witnessed by Officer Leigh. (See Pl.'s Depo. at 47-48,Def. Evid. Sub. Ex. 1.)  In Adams, the 11th Circuit found the intentional ramming of a vehicle reasonable under circumstances much less severe than those presented here.  As such, Officer Leigh acted reasonably and within the boundaries of the Fourth Amendment in seizing Abrams and Abrams' claim for unreasonable seizure is dismissed.

**B. §1983 claims against Chief Charles Trucks and City of Homewood**

Plaintiff additionally asserts constitutional deprivation claims against the City of Homewood and its police chief, Charles Trucks.  Plaintiff maintains that the City of Homewood is liable for such deprivation as a result of its policies and customs of: (1) inadequately and improperly investigating citizen complaints of misconduct; (2) inadequately supervising and training its police officer; and (3) authorizing, permitting and tolerating the custom and practice of the unconstitutional and excessive use of force by members of the Homewood Police Department. (See Compl. ¶¶ 70-76.) Plaintiff bases his claim against Police Chief Trucks on: (1) failing to properly supervise the training and conduct of Defendant Officers;  (2) failing to enforce the laws

---

[17] The tapes show Abrams run through at least 3 red lights and nearly hit at least two vehicles.

of the State of Alabama, and the provisions of the Constitution
of the United States concerning use of force by arresting
officers; and (3) promulgating and issuing inadequate policies
and procedures in the Police Manual. (See Compl. ¶¶ 65-67.)
Liability in either instance must be premised upon an actual
constitutional violation. Simply stated, because Plaintiff's
recognized constitutional right to be free from excessive force
and unreasonable seizure was not violated, no liability can be
attached to these additional defendants. Both defendants seek
summary judgment on the apparent § 1983 claim because Plaintiff
failed to make a prima facie showing of such a violation - i.e.,
that Plaintiff has not provided evidence of any constitutional
violation. There is no dispute as to any material fact which
prevents them having summary judgment on that basis. Accordingly,
summary judgment on the Count IV and Count V §1983 claims is due
to be granted as to the City of Homewood and Homewood Police
Chief Charles Trucks.[18]

---

[18] The Court does not deem it necessary to rule on Police
Chief Trucks' qualified immunity defense alternatively.  Neither
does the Court deem it necessary to discuss plaintiff's evidence
expressly related only to the claims against the City and Chief
Trucks.  Were the Court to assume a constitutional violation by
some combination of defendant police officers, such evidence, at
best, would arguably demonstrate only a simple negligent act or
simple negligent failure to act by the City or Trucks causing
unintended deprivation of a constitutional right, and a §1983
claim cannot be predicated on such simple negligence; nor is
there any evidence of any gross negligence and special
circumstances arguably rising to the level of deliberate
indifference.  See Taylor v. Ledbetter, 818 F. 2d 791 (11th Cir.
1987.) (en banc).

**C. State Law Claims Against City of Homewood, Police Chief Trucks and Officers Leigh, Brundage, Carney and Henderson.**

Counts VI-X of the complaint purport to state a number of state law claims against the City of Homewood, Police Chief Trucks and Defendant Officers.[19] The Court only has supplemental jurisdiction over those claims under 28 U.S.C. § 1367. Since the order contemplated by this Memorandum of Decision will dispose of all claims in this action over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over those state law claims which will be dismissed, without prejudice, pursuant to 28 U.S.C. § 1367. A separate order to that effect will be entered.

A separate final judgment with regard to the § 1983 claims will be entered.

DONE this 22nd day of April, 2003.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[19]   Plaintiff's state law claims apparently include assault, battery, outrage, negligence, gross negligence, and various state constitutional violations.